# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| VALERO MARKETING AND SUPPLY COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-3219 |
| GENERAL ENERGY CORPORATION, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Valero Marketing and Supply Company sued one of its distributors, General Energy Corporation, and two individuals, Hector R. Vinas and Sara L. Vinas. Valero alleged that it is owed $2.8 million for petroleum products and services sold to General Energy under a Distributor Marketing Agreement. Valero also sued Hector Vinas, General Energy's president, and Sara Vinas as guarantors of General Energy's unpaid account balance. Valero also alleged that it entered into a Brand Conversion Incentive Agreement with General Energy, under which General Energy would "brand" certain properties with Valero's marketing image. Valero alleged that because General Energy failed to pay for products and services, Valero had to "debrand" the properties. Valero seeks $1.5 million in damages for the "debranding." Valero asserted causes of action for breach of contract, sworn account liability, breach of the guaranty agreement, and quantum meruit.

Valero initially sued in Texas state court. The defendants, all Florida citizens, timely removed and moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure or, alternatively, to transfer to Florida under *forum non conveniens*.

(Docket Entry No. 3). Valero responded, arguing that a forum-selection clause in the General Terms and Conditions for Petroleum Product Purchases/Sales supports personal jurisdiction over General Energy in Texas. (Docket Entry No. 6). A careful review of the present record does not, however, show that the forum-selection clause was part of the agreements made the basis of this suit. The record also fails to show minimum contacts by Hector and Sara Vinas to support personal jurisdiction over them in Texas. Based on the motion and response; the record; and the applicable law, this court grants the motion to dismiss, without prejudice, for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. The dismissal allows the parties to litigate the claims in the pending Florida suit.

The reasons are explained in detail below.

**I.    Background**

On October 25, 2002, General Energy submitted a credit application to Valero. The application stated that by signing, General Energy acknowledged and agreed that the Valero Marketing and Supply Company General Terms and Conditions for Petroleum Product Purchases/Sales ("General Terms and Conditions") "shall apply to all sales of products [to General Energy] . . . by Valero." (Docket Entry No. 6, Ex. D). The General Terms and Conditions included the following choice-of-law and forum-selection clause:

> Choice of Law and Jurisdiction: ANY CONTROVERSY, CAUSE OF ACTION, DISPUTE OR CLAIM (COLLECTIVELY REFERRED TO AS "CLAIMS") ARISING OUT OF, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, OR THE BREACH, TERMINATION OR VALIDITY THEREOF, SHALL BE GOVERNED BY THE SUBSTANTIVE AND PROCEDURAL LAWS (EXCLUDING ANY CONFLICT-OF-LAWS, RULES OR PRINCIPLES WHICH MAY REFER THE LAWS OF THE STATE OF TEXAS TO THE LAWS OF ANOTHER JURISDICTION) OF THE STATE OF TEXAS SHALL APPLY.   THE PARTIES

> SPECIFICALLY AGREE THAT THE SOLE JURISDICTION FOR ANY CLAIMS SHALL BE IN STATE OR FEDERAL COURTS LOCATED IN HARRIS COUNTY[,] TEXAS.

(*Id.*, Ex. C ¶ 24). The General Terms and Conditions also contained the following clause:

> Composition of Agreement: Agreement date, reference number, Product, quality, quantity, parties, terms, price, location, period, measurement, payment terms and/or any other terms and conditions will be furnished in writing by telex, facsimile or other means upon finalization of a transaction, if any, under this Agreement and will be referred to by the parties as the "Special Provisions." The Special Provisions shall incorporate by reference these General Terms and Conditions for Petroleum Product Purchases/Sales (the "General Conditions"). The Special Provisions, together with these General Conditions and if applicable Valero Marketing and Supply Company's Marine Provisions and/or Terminal Loading Agreement/Customer Access Agreement will constitute the agreement between the parties (the "Agreement").

(*Id.* ¶ 1).

On January 30, 2004, General Energy and Valero entered into a "Master Agreement." The Master Agreement referred to a separate Distributor Marketing Agreement for the purchase of petroleum products, and a Brand Conversion Incentive Agreement for branding properties as Valero service stations. (Docket Entry No. 1-2, Ex. B, Master Agreement at 1). The Master Agreement, signed by Hector Vinas as president of General Energy and by Valero, was effective as of January 30, 2004. The Master Agreement did not mention or refer to the General Terms and Conditions. The Master Agreement included a merger clause stating: "This Agreement constitutes the entire agreement and understanding between Distributor [General Energy] and VMSC [Valero] . . . ." (*Id.* ¶ 12). The Master Agreement had a choice-of-law clause stating that "[t]his Agreement shall be governed by the laws of the state applicable to the Distributor Agreement." (*Id.* ¶ 9). There is no information in the file as to what state's law applies to the Distributor Agreement signed by both

parties.[1]  There was no forum-selection clause in the Master Agreement.  There is no indication in the Master Agreement that it should be considered a "Special Provision" identified in the General Terms and Conditions.

The Brand Conversion Incentive Agreement signed by Hector Vinas for General Energy and by Valero was effective as of January 1, 2004.  The Brand Conversion Incentive Agreement did not refer to the General Terms and Conditions described in the credit application.  The Brand Conversion Incentive Agreement had a merger clause stating that it was the "entire agreement" between the parties.  (Docket Entry No. 1-2, Ex. B, Brand Conversion Incentive Agreement, Final Version 6-20-05 ¶ 15).  There was no forum-selection clause.  The choice-of-law clause stated that "[t]he laws of the state applicable to the Distributor Agreement shall govern this Agreement." (*Id.* ¶ 12).  Again, there is no information in the file as to what state's law is applicable to the Distributor Agreement signed by both parties.  There is no indication in the Brand Conversion Incentive Agreement that it should be considered a "Special Provision" identified in the General Terms and Conditions.

Valero asserts that the General Terms and Conditions are provided to potential distributors when they apply for credit, which is required to become a Valero distributor.  (Docket Entry No. 6, Ex. H, Affidavit of Timothy Ammons, Litigation Counsel for Valero ¶ 4).  As noted, the credit application General Energy submitted to Valero in 2002 stated: "By your signature below, you also

---

[1] A copy of a Branded Distributor Marketing Agreement signed by Hector Vinas on behalf of General Energy but not signed by Valero is in the file.  This Agreement stated that it commenced on April 1, 2006 and terminated on June 30, 2009.  This Agreement contained a choice-of-law clause providing that "[t]his Agreement shall be governed and construed in accordance with the Laws of the state in which Distributor has its principal place of business." (Docket Entry No. 6, Ex. I: Ex. A ¶¶ 1, 20).  This Branded Distributor Marketing Agreement also contained a merger clause stating that it is the "entire agreement" between the parties.  (*Id.* ¶ 23).  There is no complete copy of the Branded Distributor Marketing Agreement signed by both parties.  Valero submitted an incomplete copy (limited to the first page) that does not include either the section that might include a choice-of-law provision or the signature page.

acknowledge and agree that Valero . . . General Terms and Conditions for Petroleum Product Purchases/Sales (a copy of which is enclosed with this package) shall apply to all sales of products to you by Valero, unless modified in a written agreement signed by Valero." (*Id.*, Ex. D). Valero and General Energy subsequently signed the Master Agreement, the Distributor Agreement, and the Branding Agreement, none of which contained a forum-selection clause and all of which contained merger clauses.

Hector and Sara Vinas signed a "Guaranty (Joint)" agreement ("Guaranty") dated as of November 18, 2002, long before the date of the Distributor and Branding Agreements that are the basis of this suit. (Docket Entry No. 6, Ex. B). There was no reference in the Guaranty to the General Terms and Conditions. There was no forum-selection clause. There was a provision that the Guaranty "shall be construed in accordance with the laws of the State of Texas, excluding its principles of conflicts of laws." (*Id.* ¶ 7).

Valero points out that the General Terms and Conditions are available on Valero's website. When General Energy became a Valero distributor, it received access to the Valero "business web portal" through an individualized user ID and password. That website "referenced" the General Terms and Conditions. (Docket Entry No. 6, Ex. F, Affidavit of Rosa Ramirez, Senior Manager of Credit for Valero ¶ 7). There is no evidence, however, that in order to access the website, General Energy had to accept or agree to the General Terms and Conditions.

Valero urges the forum-selection clause in the General Terms and Conditions as the basis for personal jurisdiction over General Energy. As to the guarantors, Valero argues that because they forwarded the Guaranty to Texas and received credit from Texas, that is sufficient for personal jurisdiction over them by a Texas court. The defendants have submitted evidence showing that they have no connection with Texas. General Energy has not made sales in Texas, has no assets in Texas,

owns no property in Texas, and has never paid taxes in or to Texas. Hector and Sara Vinas assert that they have no connection to Texas. (Docket Entry No. 3-3, Affidavit of Hector R. Vinas; Docket Entry No. 3-4, Affidavit of Sara Vinas).

The forum-selection and related jurisdiction issues are addressed below.

**II.     Analysis**

**A.     The Forum-Selection Clause**

If the forum-selection clause in the General Terms and Conditions applies, there is personal jurisdiction over General Energy. The clause is mandatory; it clearly demonstrates the "parties' intent to make [the forum] exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *see, e.g.*, *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995) (per curiam) ("This contract shall be interpreted and construed in accordance with the laws of the State of Texas. The legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas."). "Where the agreement contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory." *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) (citing, among others, *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)); *see also Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) ("The prevailing rule is clear from these and other cases that where venue is specified with mandatory language[,] the clause will be enforced."). A mandatory forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts, absent a showing of fraud or overreaching in creating the clause, enforce such consent. *See Kevlin Servs.*, 46 F.3d at 15.

When a mandatory forum-selection clause applies, it is enforceable unless the defendant shows that it is unreasonable. *See, e.g.*, *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294,

299 (5th Cir. 2004); *Hartash Constr., Inc. v. Drury Inns Inc.*, 252 F.3d 436 (5th Cir. 2001) (per curiam) (summary calendar) (unpublished); *Canvas Records, Inc. v. Koch Entm't Distribution, LLC*, No. H-07-0373, 2007 WL 1239243, at *4 (S.D. Tex. Apr. 27, 2007); *Top Branch Tree Serv. & Landscaping v. Omni Pinnacle, LLC*, No. 06-3723, 2007 WL 1234976, at *1 (E.D. La. Apr. 26, 2007). The defendant can prove unreasonableness by establishing that: (1) the inclusion of the forum-selection clause in the written contract was the product of fraud or overreaching; (2) the party opposing enforcement of the clause "will for all practical purposes be deprived of his day in court" because of the extreme inconvenience or unfairness of the forum specified in the clause; (3) the law specified in the clause is fundamentally unfair and will cause plaintiff to be deprived of a remedy; or (4) enforcement of the clause would go against a strong public policy of the forum state. *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *M/S Bremen v. Zapata Off-Shore Co.* (*The Bremen*), 407 U.S. 1, 12–13, 15, 18 (1972)). The defendant bears a "heavy burden of proof." *Id.* (citing *The Bremen*, 407 U.S. at 17); *see also Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (per curiam) (summary calendar) ("The burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the [resisting party] of his day in court.").

The petition Valero filed in Texas state court alleges that General Energy failed to pay for products and services, breaching the Branded Distributor Marketing Agreement and the Brand Conversion Incentive Agreement. These Agreements, as well as the related Master Agreement, contained merger clauses. The clauses stated that the Agreements constituted the parties' "entire agreement" and that there were "no representations, stipulations, warranties, agreements or understandings with respect to the subject matter of this Agreement which are not fully expressed

herein and which are not superseded hereby." (Docket Entry No. 1-2, Ex. B, Master Agreement ¶ 12). Neither the Master Agreement, the Branded Distributor Marketing Agreement (at least the portions the parties filed with the court), nor the Brand Conversion Incentive Agreement refer to the General Terms and Conditions. The Agreements contain no forum-selection clause and do not refer to or incorporate the General Terms and Conditions.[2] There is no enforceable forum-selection clause on which to rely for personal jurisdiction over the General Energy.[3] Whether this court has personal jurisdiction must be analyzed under a traditional minimum-contacts inquiry.

### B.     Minimum Contacts

"In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). "A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The Texas long-arm statute, Texas Civil Practice & Remedies Code § 17.041 *et seq.*, confers jurisdiction to the limit permitted by due process. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990); *see also Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 459

---

[2] Valero cites General Energy Company's access to Valero's website, which "referenced" the General Terms and Conditions. (Docket Entry No. 6, Ex. F, Affidavit of Rosa Ramirez, Senior Manager of Credit for Valero ¶ 7). The merger clauses in the parties' Agreements required "a writing signed by [General Energy Company] and an officer of [Valero]" to reform, alter, of modify the Agreements. (Docket Entry No. 1-2, Ex. B, Master Agreement ¶ 12). There is no evidence in this record to show that General Energy's access to the website satisfies this requirement.

[3] Valero cannot rely on the General Terms and Conditions to show personal jurisdiction over the individual defendants. Valero does not allege that the individual defendants were parties to the credit application containing the reference to the General Terms and Conditions, and the Guaranty contains no reference to the General Terms and Conditions or to the forum-selection clause. (Docket Entry No. 6, Ex. B).

(2008). In Texas, the personal jurisdiction inquiry is the due process analysis. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424–25 (5th Cir. 2005).

Due process permits the exercise of personal jurisdiction over a nonresident defendant when the plaintiff shows that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of 'fair play and substantial justice.'" *McFadin*, 587 F.3d at 759 (quoting *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)). A court must determine first whether the defendant has the requisite minimum contacts with the forum state, and second whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Panda Brandywine*, 253 F.3d at 867.

"The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). A court may assert personal jurisdiction under a theory of either general or specific personal jurisdiction. A court exercises specific jurisdiction over a defendant if the cause of action alleged arises out of, or is related to, the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). When a court exercises personal jurisdiction over a defendant in a case not arising out of or related to the defendant's contacts with the forum state, the court is exercising general jurisdiction over the defendant. *Id.* at 414 n.9.

In the Fifth Circuit, specific personal jurisdiction is a claim-specific inquiry, requiring a "plaintiff bringing multiple claims that arise out of different forum contacts of the defendant [to] establish specific jurisdiction for each claim." *McFadin*, 587 F.3d at 759 (quoting *Seiferth v.*

*Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* (quoting *Seiferth*, 472 F.3d at 271); *see also Seiferth*, 472 F.3d at 271 (requiring the defendant to show that exercise of personal jurisdiction is unfair or unreasonable); *Freudensprung*, 379 F.3d at 343 (noting that a court may exercise specific jurisdiction if: "(1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant[']s contacts with the forum state" ). The inquiry into the defendant's contacts with the forum is fact intensive, and no one element is decisive; "the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759 (quoting *Luv N' care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *See Helicopteros*, 466 U.S. at 414–15; *Johnston v. Multidata Sys. Int'l. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Helicopteros*). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently

systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985)). The continuous and systematic contacts test for general jurisdiction "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Central, S.A.*, 249 F.3d 413, 419 (5th Cir. 2001). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).

When a nonresident defendant challenges in personam jurisdiction, the plaintiff bears the burden of demonstrating facts supporting jurisdiction. *Johnston*, 523 F.3d at 609. "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart*, 772 F.2d at 1192. "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "'must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts.'" *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine*, 253 F.3d at 869.

### i. General Energy

Valero points to General Energy's contacts with Valero personnel in Texas in "negotiating the various agreements in question"; General Energy's payments to an address in Texas and payments to Valero's bank located in Texas; and Valero's extension of $1.26 million in credit in a

check from its Texas headquarters.[4] (Docket Entry No. 6 at 13–14). The law is clear that a defendant does not establish minimum contacts with a forum merely by entering into a contract with a resident of the forum state. *McFadin*, 587 F.3d at 760 (citing *Moncrief Oil Int'l*, 481 F.3d at 311). The Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung*, 379 F.3d at 344; *see also Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) ("[T]he combination of mailing payments to the forum state, engaging in communications surrounding the execution and performance of a contract, and the fact that a nonresident enters into a contract with a resident are insufficient to establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over a nonresident defendant."). A recent Fifth Circuit opinion considering and applying these general propositions, *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009), makes clear the contacts necessary for specific jurisdiction in a breach of contract suit.

In *McFadin*, Texas handbag manufacturers filed suit in Texas against two out-of-state defendants. *Id.* at 756. The plaintiffs alleged that one defendant had breached a sales agreement and that both defendants sold "knock-off" versions of the plaintiffs' bags. One defendant was an independent sales representative who maintained a showroom in Denver, Colorado. The plaintiffs

---

[4] Valero relies on the "specific contacts with Texas made the basis of this suit" but also alleges that General Energy's "contacts in Texas with Valero were purposeful, continuous and systematic," tracking the standard for general jurisdiction. (Docket Entry No. 6 at 13). Although Valero uses language associated with a finding of general jurisdiction, the only contacts alleged or disclosed in the record arise out of the transactions at issue in the suit. There is no evidence of Texas contacts by the defendants other than those related to the transactions at issue. The issue is specific jurisdiction.

and this individual entered into a written sales agreement under which she became a sales representative for the plaintiffs' handbags. The plaintiffs sent samples from Texas to Denver for this defendant's showroom, and she received a commission for each order she obtained for the plaintiffs' handbags. This defendant took orders for retailers for the handbags in Colorado and in other states. Although she never took orders in Texas, $40,000 in orders came from Texas-based retailers. This defendant faxed the orders she received to the plaintiffs in Texas, who shipped the goods directly to the retailer placing the order. The retailers paid the plaintiffs directly, and the plaintiffs mailed commission checks to the defendant in Colorado. The plaintiffs eventually terminated the agreement, and a dispute arose over commissions and the sample merchandise remaining in the defendant's possession. *Id.*

The plaintiffs filed suit in Texas and argued that the court had personal jurisdiction over the Colorado defendant for the breach of contract claim. The plaintiffs argued that the parties had contractual relationships that spanned a decade and included orders for over $1,000,000 in handbags; there were significant ongoing communications between the parties, including sales orders and commissions; and the defendant had made some of the sales to Texas retailers. The court held that these contacts were insufficient to establish specific personal jurisdiction. The contract was centered around the defendant's operations outside Texas, the initial discussions about forming the relationship occurred in Colorado, the defendant's sales efforts focused on the Rocky Mountain states, she never traveled to Texas to sell the plaintiffs' handbags, and the purpose of the agreement was to open markets outside Texas. *Id.* at 760.

The court distinguished two cases, *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974), and *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982). *Product Promotions* involved a contract negotiated and entered into in Texas, to which Texas law

13

likely applied. *McFadin*, 587 F.3d at 760. In *Mississippi Interstate Express*, the parties had a sustained contractual relationship in which the forum state was the "hub of the parties' activities." *Id.* at 761 (quoting *Mississippi Interstate Express*, 681 F.2d at 1011). The court emphasized that in *McFadin*, "[t]he little contact with Texas came only from the fortuity of the plaintiffs' residence there." *Id.*

The defendant in *McFadin* had significant communications with the plaintiffs in Texas over the course of the contract's performance, including sending orders to the plaintiffs in Texas and the plaintiffs sending samples and commission checks from Texas to Colorado. But Texas was not the hub of the parties' activities. Similarly, although General Energy sent orders and payments to Texas, the hub of the parties' activities was not Texas. Valero contracted with General Energy for the branding of, and the supply of products and services to, General Energy gas stations in Florida, Kentucky, Tennessee, Virginia, and Georgia, all markets outside Texas. The contacts on which Valero relies, such as the credit and payments sent from and to Texas, "do[] not weigh heavily in the calculus of contacts." *See Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985). Each party apparently signed the Agreements in its own state. Valero has not presented additional factors weighing in favor of specific jurisdiction, such as training of the defendants' employees in the forum state, ongoing regulation and monitoring of contract compliance within the forum state, or a valid choice-of-law provision specifying the forum state's law. *See Electrosource Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999) (training of employees and monitoring and quality control in the forum state); *Stuart*, 772 F.2d at 1195 (choice of law). The record does not support the conclusion that General Energy is subject to specific or general personal jurisdiction in Texas. General Electric's motion to dismiss under Rule 12(b)(2) is granted.

      **ii.**     **The Guarantors**

14

The individual defendants, Hector and Sara Vinas, both reside in Florida. Valero relies on their execution of the joint Guaranty as the only[5] relevant contact with Texas.[6] Valero alleges that the Guaranty was "an inducement" to entering into the Distributor Marketing Agreements and the Brand Conversion Agreement with General Energy but does not point to evidence in the record to this effect.[7] (Docket Entry No. 6 at 6). There is no statement in the Guaranty that it was such an inducement.

The Guaranty contains a choice-of-law clause specifying Texas law. A choice-of-law clause in an agreement between a plaintiff and a nonresident defendant is itself insufficient to establish personal jurisdiction but is one factor among many that bears on jurisdiction. *See Electrosource Inc.*, 176 F.3d at 873 ("[T]he Supreme Court has indicated that a choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction.").

Valero relies on *Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, 653 F.2d 921 (5th Cir. Unit A Aug. 1981) (per curiam) (summary calendar), and *J.D. Fields & Co. v. W.H. Streit, Inc.*, 21 S.W.3d 599 (Tex. App.—Houston [1st Dist.] 2000, no pet.), to support the

---

[5] Valero has not alleged that General Energy is an alter ego of the individual defendants; the general rule that a corporation's contacts cannot form the basis for exercise of jurisdiction over an individual applies. *See Stuart*, 772 F.2d at 1197.

[6] Valero asserts this argument in connection with its reliance on the forum-selection clause and does not specifically assert that this contact provides specific jurisdiction over the guarantors in a minimum contacts analysis. However, the court will consider whether this contact supports specific jurisdiction.

[7] It is not clear that the Guaranty applies to the Brand Conversion Incentive Agreement. The Brand Conversion Incentive Agreements provide the terms for converting service stations to Valero or Shamrock branded stations. The Guaranty applies to the "consideration of the credit that [Valero] may hereafter extend to General Energy . . . in connection with one or more contracts between the Creditor and the Buyer for the purchase, sale, and/or exchange of crude oil, refining feedstock, gasoline, refined products, natural gas liquids, natural gas, electricity, and/or other commodities and/or derivatives thereof." (Docket Entry No. 6, Ex. B). It is unclear that the branding or "debranding" of service stations is the sale or exchange of the items listed in the Guaranty.

exercise of specific personal jurisdiction over the individual defendants.  In *Marathon Metallic Building Co.*, three Colorado residents executed a guaranty "without monetary limit and in broad terms" with a Texas corporation to secure payment of a Colorado corporation's obligations.  653 F.2d at 922.  The "Continuing Guaranty" was forwarded to the Texas corporation in Texas.  *Id.*  Shortly thereafter, the Colorado and Texas corporations entered into a contract providing for delivery of goods "f.o.b. Houston" and containing a Texas choice-of-law clause.  *Id.* at 922.  The Texas corporation sued the Colorado corporation and the individual guarantors in Texas for unpaid amounts due under the contract.  *Id.*  The district court granted a motion to dismiss for lack of personal jurisdiction filed by one of the guarantors.  *Id.*  The appellate court reversed.  *Id.*

In holding that the guarantor had sufficient contacts with Texas for a Texas court to exercise personal jurisdiction, the appellate court stated:

> [The guarantor], then a corporate officer, director, and shareholder [of the defendant corporation], issued his continuing guaranty to another corporation described on the guaranty's face as of "Houston, Texas." His guaranty plainly contemplated advances of credit to [the guarantor's] corporation, with an open-ended obligation on his part to stand good for those advances.  Another corporate officer, its president, immediately forwarded the guaranty to Houston; and [the guarantor's] corporation subsequently entered into credit transactions with the Texas entity, purchasing merchandise and taking title in Texas.  The effect of such a guaranty is to involve [the guarantor] in each such advance of credit over many months and purposefully to cause business activity, foreseeable by [the guarantor], in the forum state.  The general contract pursuant to which this was done, issued and sent a few weeks after the guaranty, specifically stipulated that it would be governed by the laws of Texas.  Here is purposeful and affirmative action, resulting in, at the least, a minimum contact with Texas by [the guarantor].

*Id.* at 923 (citation omitted).

In a case applying *Marathon*, this court held that a guaranty containing a choice-of-law clause, combined with other factors, was sufficient to establish specific personal jurisdiction over

16

the guarantor.  In *Goodman Co. v. A&H Supply, Inc.*, 396 F. Supp. 2d 766 (S.D. Tex. 2005), a Texas-based corporation and an Idaho corporation entered into a distributorship agreement to sell in Idaho air conditioning and heating units that were manufactured in Tennessee and Texas.  *Id.* at 769.  When the president and primary shareholder of the Idaho corporation stated that he would transfer his ownership interest to a new owner with whom the Texas corporation had no relationship, the president and primary shareholder negotiated a guaranty of the Idaho company's debts by another Idaho company.  *Id.*  The guarantor company agreed to pay the Idaho company's debts.  *Id.*  The guaranty contained a Texas choice-of-law clause that also stated that the "contract shall be considered to be a Texas contract for all purposes."  *Id.*  This court held that there was specific personal jurisdiction over the guarantor.  *Id.* at 774.  The language in the contract, while not a forum-selection clause, put the Idaho guarantor on clear notice that it might be haled into a Texas court to enforce the guaranty.  *Id.*  It was critical to the analysis, however, that the guarantor knew that the guaranteed debts were owed to a Texas company, that many of the items purchased were manufactured in Texas, that the guarantor knew it was embarking on a long-term contractual relationship with a Texas company, and that there were clearly foreseeable effects in Texas.  *Id.*

Similarly, in *NE Corp. v. Fish*, No. Civ. A. 3:05CV1525-B, 2006 WL 196951 (N.D. Tex. 2006), the court considered whether to exercise personal jurisdiction over a guarantor.  The underlying contracts were dependent on the execution of the guaranty.  *Id.* at *3.  The guaranty agreement stated that the resident plaintiff would not extend credit without the guaranty; the guaranty stated that the guarantor was required to have property and assets in Texas sufficient to satisfy and repay the obligations; the guaranty required payments under the note and guaranty to be made to Texas; and the guaranty contained a Texas choice-of-law clause.  *Id.*  The court held that

17

the court had specific personal jurisdiction over the guarantor for the breach of contract claim because of the combination of the broad guaranty and the Texas choice-of-law provision. *Id.* at *4.

In *J.D. Fields & Co. v. W.H. Streit, Inc.*, 21 S.W.3d 599 (Tex. App.—Houston [1st Dist.] 2000, no pet.), the resident plaintiff sued a nonresident company and an individual nonresident guarantor for breach of contract and quantum meruit arising out of a New Jersey public works project. *Id.* at 601. When the defendant company was denied credit in connection with the project, the guarantor telephoned the plaintiff's Houston office and offered a personal guaranty for the credit. The guarantor followed up by sending the guaranty by fax to the plaintiff's Houston office. The defendant company made a partial payment to the plaintiff in Houston. The plaintiff sued the company and the guarantor in Texas state court for the unpaid balance. *Id.* The defendant company was subject to personal jurisdiction in Texas. The guarantor was also subject to specific personal jurisdiction in the Texas court. The "most critical fact" was that the defendant telephoned the plaintiff's Houston office offering personally to guarantee the defendant company's debts to induce the plaintiff into extending credit. *Id.* at 604. Those actions, combined with the agreement to make payments to the plaintiff's Houston office, faxing the agreement to the Houston office, and mailing checks to the Houston office, were sufficient contacts for personal jurisdiction. *Id.* at 604–05.

In *Consolidated Companies, Inc. v. Kern*, No. CIV. A. 99-2704, 2000 WL 1036186 (E.D. La. July 25, 2000), the individual defendant, a Texas resident, executed a guaranty for debts owed to a Louisiana corporation. The court held that the nonresident defendant was subject to specific personal jurisdiction in Louisiana because: (1) he executed the guaranty voluntarily; (2) the guaranty explicitly stated that the guarantor executed the guaranty in order to induce the Louisiana company to provide credit; (3) and subsequent business activity in Louisiana for future purchases was foreseeable. *Id.* at *3.

In contrast, the court in *U.S. Restaurant Properties Operating L.P. v. Aloha Petroleum Ltd.*, No. CIV. A. 3:01-CV-0987-D, 2001 WL 1568762 (N.D. Tex. 2001), held that there was no personal jurisdiction in Texas over a nonresident guarantor. The facts of that case are similar to the present dispute. In *U.S. Restaurant*, the defendant was a Hawaii citizen who had guaranteed obligations for a third party to pay rent to the plaintiff for leases on premises in Hawaii. *Id.* at *1. The plaintiff sued in Texas state court for a declaratory judgment of its rights under the guaranty agreement, and the defendant removed. In evaluating the Texas contacts, the court observed that the Hawaii defendant's principal activity was marketing retail gasoline in Hawaii and that it had never distributed, sold, or marketed gasoline in Texas; that the guaranty and related agreements were negotiated with the plaintiff's representatives in Dallas but executed in Hawaii; that the guaranty agreement contained a Texas choice-of-law clause; and that the defendant's senior executives made a trip to Dallas to discuss the parties' relationship. *Id.* at *2–3. The court held that it lacked personal jurisdiction over the defendant, emphasizing that the parties' long-distance communications and the Texas choice-of-law clause were insufficient to support jurisdiction. *Id.* at *3.

Under these cases, a broad guaranty agreement coupled with a choice-of-law clause either in the guaranty agreement or the underlying contract, with evidence that the guaranty was given specifically to induce the resident plaintiff to extend credit, can be sufficient for a court to exercise personal jurisdiction over the nonresident defendant guarantor. In the present case, as in *U.S. Restaurant Properties Operating L.P. v. Aloha Petroleum Ltd.*, there is a Guaranty with a Texas choice-of-law clause. In the present case, the Guaranty was signed in 2002, near the time General Energy submitted an online credit application to Valero. General Energy and Valero did not enter into the Distribution Agreement, the Branding Agreement, or the Master Agreement until 2004. Neither the Guaranty nor these Agreements recites the Guaranty was an inducement. There is no

19

evidence, as in some of the cases discussed above, that the guarantors executed the Guaranty in response to a denial of credit. There is no basis to infer that Hector and Sara Vinas would anticipate being haled into a Texas court on a Guaranty for contractual obligations incurred over a year later. The individual guarantors' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is granted.

**III.    Conclusion**

The motion to dismiss for lack of personal jurisdiction is granted. The motion to transfer is denied as moot. This suit is dismissed, without prejudice, to permit the parties to litigate in the Florida suit that is already under way.

SIGNED on March 9, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge